*670 Justice Breyer
delivered the opinion of the Court.
The federal witness tampering statute makes it a crime “to kill another person, with intent to . . . prevent the communication by any person to a law enforcement officer ... of the United States” of “information relating to the . . . possible commission of a Federal offense.” 18 U. S. C. § 1512(a) (1)(C). We focus on instances where a defendant killed a person with an intent to prevent that person from communicating with law enforcement officers in general but where the defendant did not have federal law enforcement officers (or any specific individuals) particularly in mind. The question before us concerns what, if anything, the Government must show beyond this broad indefinite intent in order to show that the defendant more particularly intended to prevent communication with federal officers as well. We hold that, in such circumstances, the Government must show that there was a reasonable likelihood that a relevant communication would have been made to a federal officer.
I
In the early morning hours of March 3, 1998, Charles Fowler and several other men prepared to rob a Florida bank. They met in a cemetery, put on black clothes and gloves, began to drink and use drugs, and discussed the proposed crime. Shortly before daybreak a local police officer, Todd Horner, came upon the group. He pulled out his gun and asked the men to identify themselves. Fowler and some of the others managed to overcome Horner and take his gun. After Horner spoke to one of the men by name, Fowler said, “Now we can’t walk away from this thing.” App. 38 (internal quotation marks omitted). And he shot and killed Horner.
Federal authorities charged Fowler with violating the federal witness tampering statute. He was convicted. On appeal, Fowler argued that the evidence was insufficient to show that he had killed Horner intending to prevent Horner *671 from communicating with a federal officer. The Eleventh Circuit disagreed. It held that a showing of a “possible or potential communication to federal authorities” was sufficient. 603 F. 3d 883, 888 (2010).
Fowler sought certiorari. And because the Circuits have disagreed about this last-mentioned matter, we granted Fowler’s petition for certiorari. Compare United States v. Harris, 498 F. 3d 278, 286 (CA4 2007) (“So long as the information the defendant seeks to suppress actually relates to the commission or possible commission of a federal offense, the federal nexus requirement is established”), with United States v. Lopez, 372 F. 3d 86, 91-92 (CA2 2004) (requiring Government to show federal crime along with “ ‘additional appropriate evidence’” that “the victim plausibly might have turned to federal officials”), vacated and remanded on other grounds, 544 U. S. 902 (2005); see also United States v. Bell, 113 F. 3d 1345, 1349 (CA3 1997); United States v. Causey, 185 F. 3d 407, 422-423 (CA5 1999); United States v. Wright, 536 F. 3d 819, 824-825 (CA8 2008).
II
The federal witness tampering statute in relevant part forbids the “kill[ing] or attempted] kill[ing]” of “another person” with a certain “intent,” namely, an
“intent to ... prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . .” 18 U.S. C. § 1512(a)(1)(C).
A related subsection says that in a prosecution for this offense
“no state of mind need be proved with respect to the circumstance ... that the judge is a judge of the United States or that the law enforcement officer is an officer *672 or employee of the Federal Government . . . § 1512(g)(2).
This language makes clear that in a prosecution the Government must prove (1) a killing or attempted killing, (2) committed with a particular intent, namely, an intent (a) to “prevent” a “communication” (b) about “the commission or possible commission of a Federal offense” (c) to a federal “law enforcement officer or judge.”
The question here is how this language applies when a defendant (1) kills a victim, (2) with an intent (a) to prevent a communication (b) about the commission or possible commission of a federal offense but (c) to law enforcement officers in general rather than to some specific law enforcement officer or set of officers which the defendant has in mind. This kind of circumstance is not necessarily rare, as the facts here illustrate. Fowler (we here assume) was not thinking specifically about federal officers, but he would nonetheless have wanted to prevent communication with federal officers from taking place (had he considered the matter).
Ill
When the defendant has in mind a particular individual or a particular set of individuals with whom he fears the victim might communicate, the application of the statute is relatively clear. For instance, if a defendant kills a victim with the intent of preventing the victim from communicating with a particular individual, say, John Smith, who the defendant knows is a federal law enforcement officer, the statute fits like a glove. If a defendant kills a victim with the intent of preventing the victim from communicating with Sam Smith, who is in fact (but who the defendant does not know is) a federal law enforcement officer, the statute still fits, for it specifically says that “no state of mind need be proved” with respect to this last-mentioned -circumstance.
Nothing in the statutory language, however, limits it to these kinds of instances, instances in which the defendant *673 has some law enforcement officer or set of officers, or other identifiable individuals, particularly in mind. Moreover, any such limitation would conflict with the statute’s basic purpose. Witness tampering may prove more serious (and more effective) when the crime takes place before the victim has engaged in any communication at all with law enforcement officers — at a time when the precise communication and nature of the officer who may receive it are not yet known. Cf., e. g., S. Rep. No. 97-532, pp. 14, 15 (1982) (statute applies “to offenses against witnesses, victims, or informants which occur before the witness testifies or the informant communicates with law enforcement officers”); id., at 19 (Witness “[ijntimidation offenses are particularly insidious and do violence to traditional notions of justice because no one can be convicted of a crime which is not reported. [Section 1512] reaches intimidation offenses committed before a crime is reported to the appropriate authorities”). Hence the statute covers a defendant who kills with intent to prevent communication with law enforcement officers generally (i. e., with any and all law enforcement officers). And we must consequently decide what, if anything, the Government must show about the likelihood of a hypothetical communication with a federal law enforcement officer in circumstances where the defendant did not think specifically about any particular communication or its recipient.
In these circumstances, the application of the statute is not as simple. We cannot determine whether the individual the defendant had in mind is in fact a federal officer, because the defendant did not have a particular individual in mind. And we cannot insist that the defendant have had some general thought about federal officers in mind because the statute says that “no state of mind need be proved” in respect to the federal nature of the communication’s recipient. § 1512(g)(2). What, then, must the Government show to prove that such a defendant intended to prevent communications to federal officers?
*674 We begin with two basic propositions. First, in our view, the Government need not show beyond a reasonable doubt (or even that it is more likely than not) that the hypothetical communication would have been to a federal officer. No Circuit has adopted this interpretation, and no party argues for it here. But see post, at 679-680 (Scalia, J., concurring in judgment). And for good reason: The relevant question concerns the defendant’s intent. The Government will already have shown beyond a reasonable doubt that the defendant possessed the. relevant broad indefinite intent, namely, the intent to prevent the victim from communicating with (unspecified) law enforcement officers. And one can possess an intent (i. e., one can act in order to bring about a certain state of affairs) even if there is considerable doubt whether the event that the intent contemplates will in fact occur. One can, for example, put up shutters with the intent of protecting the furniture from hurricane damage even if there is considerable doubt that any hurricane will actually occur. One can drive to Fenway Park with the intent of seeing the Red Sox play that afternoon even if a mistake about the date means the stadium is empty. One can blow up a bridge with the intent of stopping an advancing army, even if the army advances regardless, along a different route. And, similarly, a defendant can kill a victim with an intent to prevent the victim from communicating with federal law enforcement officers even if there is some considerable doubt that any such communication would otherwise have taken place.
But, second, the Government must show more than the broad indefinite intent we have described, the intent to prevent communications to law enforcement officers in general. That is so for two separate reasons. For one thing, the statute speaks of an “intent to prevent” something. But (apart from mistakes, as in our Red Sox example) one cannot act with an “intent to prevent” something that could not possibly have taken place regardless. We can speak of a Colorado trout fisherman who tries to prevent his trout stream from *675 being invaded by pike or carp, but in ordinary circumstances we cannot speak about trying to prevent the stream’s invasion by whales. Indeed, the dictionary defines “prevent” as “to render (an intended, possible, or likely action or event) impractical or impossible by anticipatory action.” OED Online (Mar. 2011) (emphasis added), http://www.oed.com/view/ Entry/151073?rskey=QWN6QB&result=2&=false (all Internet materials as visited May 23, 2011, and available in Clerk of Court’s case file).
For another thing, to allow the Government to show no more than the broad indefinite intent we have described (the intent to prevent communications to law enforcement officers in general) would bring within the scope of this statute many instances of witness tampering in purely state investigations and proceedings, thus extending the scope of this federal statute well beyond the primarily federal area that Congress had in mind. See infra, at 677. For both these reasons, unlike the dissent, we cannot read the statute as intending to excuse the Government from proving something about the hypothetical communication with federal officers. The question remains, what is that something?
IV
We find possible answers to this question in the dictionary definition of the word “prevent.” As we have said, that word applies where a defendant, by “anticipatory action,” (here, killing a victim) intended “to render . . . impractical or impossible” an “action or event” (here, the victim’s communication with a federal law enforcement officer) which (1) was “intended,” (2) was “possible,” or (3) was “likely” to have otherwise occurred.
No one suggests that the first word, the word “intended,” sets forth the appropriate standard. That word in this context refers to the victim’s intent. That intent is often difficult to discern. Moreover, to require the Government to prove it would prevent the statute from applying where it is *676 plain that federal officers would have been involved in investigating and prosecuting the offense (for instance, robbing the United States Bullion Depository at Fort Knox), but where the defendant killed the victim before the victim had decided to communicate to law enforcement officers. Congress, however, intended the statute to apply in these last-mentioned circumstances. See swpra, at 672.
The Government (and the Eleventh Circuit) would rest their standard on the second word, the word “possible.” See Brief for United States 10 (standard is “whether it was reasonably possible that at least one of the communications that the murder . . . was intended to prevent would have been with a federal law enforcement official”); 603 F. 3d, at 888 (requiring showing of a “possible or potential communication to federal authorities”). But, in our view, that standard is difficult to reconcile with the statute’s language and its intended, basically federal, scope. Cf. supra, at 675.
Often, when a defendant acts in ways that violate state criminal law, some or all of those acts will violate federal criminal law as well. And where a federal crime is at issue, communication with federal law enforcement officers is almost always a possibility. Thus, to allow the Government to show only a mere possibility that a communication would have been with federal officials is to permit the Government to show little more than the possible commission of a federal offense. (That is to say, the latter showing by itself would almost automatically show the statutorily necessary connection with a federal law enforcement officer.) The “possibility” standard would thereby weaken or eliminate the independent force of the separate statutory requirement that the defendant, in killing the victim, must intend to prevent communication with one who is “a law enforcement officer or judge of the United States.” 18 U. S. C. § 1512(a)(1)(C) (emphasis added); see § 1515(a)(4) (defining “law enforcement officer” as “an officer or employee of the Federal Government” (emphasis added)). Cf. Duncan v. Walker, 533 U. S. 167, 174 *677 (2001) (normally we must give effect “to every clause and word of a statute” (internal quotation marks omitted)); Ratzlaf v. United States, 510 U. S. 135, 140-141 (1994) (expressing particular reluctance to “treat statutory terms” as “surplusage” “when the words describe an element of a criminal offense”).
Moreover, because of the frequent overlap between state and federal crimes, the use of a standard based on the word “possible” would transform a federally oriented statute into a statute that would deal with crimes, investigations, and witness tampering that, as a practical matter, are purely state in nature. See, e. g., Dept, of Justice, Bureau of Justice Statistics (FY 2008 Persons arrested and booked, Drug offense: Marijuana), http://bjs.ojp.usdoj.gov/fjsrc; Dept, of Justice, Federal Bureau of Investigation, 2008 Crime in the United States (Arrests), http://www2.fbi.gov/ucr/cius2008/ arrests/index.html; (Table 29), http://www2.fbi.gov/ucr/ cius2008/data/table_29.html (In 2008, 0.7% of arrests for marijuana offenses were made by federal law enforcement officers); see also Jones v. United States, 529 U. S. 848, 858 (2000) (“[Ujnless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance in the prosecution of crimes” (internal quotation marks omitted)).
The defendant argues that we should fashion a standard based on the third word, the word “likely.” And we agree that doing so is consistent with the statute’s language and objectives. We consequently hold that (in a case such as this one where the defendant does not have particular federal law enforcement officers in mind) the Government must show a reasonable likelihood that, had, e. g., the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer. That is to say, where the defendant kills a person with an intent to prevent communication with law enforcement officers generally, that intent includes an *678 intent to prevent communications with federal law enforcement officers only if it is reasonably likely under the circumstances that (in the absence of the killing) at least one of the relevant communications would have been made to a federal officer.
The Government need not show that such a communication, had it occurred, would have been federal beyond a reasonable doubt, nor even that it is more likely than not. For, as we have said, one can act with an intent to prevent an event from occurring without it being true beyond a reasonable doubt (or even more likely than not) that the event would otherwise occur. (Recall the homeowner who closes his shutters in order to prevent damage from a hurricane that may not happen. Supra, at 674.) But the Government must show that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical. Jones, who kills Smith to prevent his communicating with law enforcement officers in general, does not kill Smith to prevent his communicating with Lithuanian law enforcement officers, for there is no reasonable likelihood that any Lithuanian officers would become involved.
V
Fowler argues that the evidence in this case is insufficient to satisfy a “reasonable likelihood” standard. He concedes, however, that he did not raise this question specifically at trial. Tr. of Oral Arg. 21-22. We leave it to the lower courts to determine whether, and how, the standard applies in this particular case.
The judgment of the Court of Appeals for the Eleventh Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.