SHWARTZ, Circuit Judge,
dissenting:
The Majority and I agree that if Willie Tyler can meet the “actual innocence” standard to invoke § 2255’s “safety valve,” then he would be permitted to file a peti *254 tion under § 2241. Maj. Typescript at 245-46. I depart from the Majority, however, because I understand the actual innocence standard to require us to consider whether a reasonable, properly instructed juror would have convicted Tyler and applying this standard to the present record supports a conclusion that Tyler has not met the actual innocence standard and that the order of the District Court should be affirmed. Further, unlike my colleagues, I conclude that the general verdict in this case does not impact our ability on habeas review to evaluate whether a reasonable, properly instructed juror would have convicted Tyler.
I.
Under Bousley v. United States, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), and Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), to demonstrate “actual innocence,” a habeas petitioner must show that, in light of all the evidence, it is more likely than not that no reasonable, properly instructed juror would have convicted him.[1] Bousley, 523 U.S. at 623, 118 S.Ct. 1604; Schlup, 513 U.S. at 327-29, 115 S.Ct. 851.
Tyler was convicted of violating the Victim and Witness Protection Act (“VWPA”), 18 U.S.C. § 1512, which makes it unlawful to, among other things, tamper with a person, by murder or intimidation, with the intent to prevent that person from participating in an “official proceeding” or to tamper with a person, by murder or intimidation, with the intent to prevent that person from communicating with a “law enforcement officer.”[2] As the Majority notes, after Tyler’s trial, the Supreme Court clarified the VWPA’s federal nexus requirement under both the official proceeding provisions and the law enforcement investigation-related provisions in Arthur Andersen LLP v. United States, 544 U.S. 696, 125 S.Ct. 2129, 161 L.Ed.2d 1008 (2005), and Fowler v. United States, — U.S. —, 131 S.Ct. 2045, 179 L.Ed.2d 1099 (2011), respectively. Maj. Typescript at 246-48. Because the jury was instructed before these cases were decided, the District Court’s instructions were based on an interpretation of the VWPA that, though correct at the time, was ultimately rendered erroneous. Accordingly, the jury was instructed under theories that are now “legally invalid.” See United States v. Syme, 276 F.3d 131, 145 (3d Cir.2002) (noting that a legal theory is invalid where “the indictment or the district court’s jury instructions are based on an erroneous interpretation of law or contain a mistaken description of the law.”). As I understand the Supreme Court’s cases on actual innocence, however, that is just the beginning *255 of our inquiry. To apply the actual innocence standard, we must also identify the proper instructions for the crime charged and evaluate the record in light of these instructions to determine if a reasonable, properly instructed juror would have convicted Tyler.[3]
Because “ ‘[ajctual innocence’ means factual innocence, not mere legal insufficiency,” a showing that the jury was instructed on a legally invalid theory alone does not satisfy the actual innocence standard. Bousley, 523 U.S. at 623, 118 S.Ct. 1604. Bousley and Schlup require the Court to ask what a reasonable, properly instructed juror “would do ” when considering the evidence presented. Schlup, 513 U.S. at 329, 115 S.Ct. 851 (emphasis added); see also Bousley, 523 U.S. at 623, 118 S.Ct. 1604. Unlike the direct appeal cases on which the Majority relies, Bousley and Schlup require us to ignore what the improperly instructed jury at Tyler’s trial actually did and direct that we examine the record under the current law. As a result, legally invalid jury instructions given at trial alone cannot render a petitioner actually innocent because Bousley and Schlup require us to review the facts from the perspective of a reasonable, properly instructed juror.[4]
In Schlup, the Supreme Court set forth certain attributes of such a reasonable juror. First, such a “reasonable juror would consider fairly all of the evidence presented.” Schlup, 513 U.S. at 329, 115 S.Ct. 851. Second, “such a juror would conscientiously obey the instructions of the trial .court requiring proof beyond a reasonable doubt.” Id. Finally, and most importantly here, courts must presume that such a juror has been “properly instructed.” Id. A “properly instructed” juror is a juror who has been given “completely accurate” instructions. See Goldblum v. Klem, 510 F.3d 204, 240 (3d Cir.2007); Davies, 394 F.3d at 196 (reviewing an actual innocence claim and considering the perspective of a properly instructed juror). Accordingly, if an instruction was erroneous when it was given, a court evaluating a claim of actual innocence must determine whether a cor *256 rect instruction, in light of the record, “would change the jurors’ minds as to ... guilt.” Goldblum, 510 F.3d at 235.
II.
Under this standard, the analysis is straightforward. As the Majority correctly points out, Arthur Andersen and Fowler clarified the federal nexus requirement under both the official proceeding provisions and the law enforcement investigation-related provisions. Maj. Typescript at 246-48. Thus, under Bousley and Schlup, we must apply the law as it currently stands to the record and determine whether “it is more likely than not that no reasonable juror would have convicted [Tyler].” Bousley, 523 U.S. at 623, 118 S.Ct. 1604 (quotation marks and citations omitted); see also Ryan, 645 F.3d at 918 (noting that Bousley requires a court to ask “whether, applying current legal standards to the trial record, [a petitioner] is entitled to a judgment of acquittal.”).
To convict on the official proceeding provisions after Arthur Andersen, the Government must “prov[e] that the defendant contemplated a particular ‘official proceeding’ that was foreseeable when he or she engaged in the proscribed conduct.” United States v. Shavers, 693 F.3d 363, 378 (3d Cir.2012). Here, I agree with the Majority, and every court that has reviewed the facts surrounding Proctor’s murder, that there is a total absence of proof of an “official proceeding,” as defined by the statute, of any kind, whether particular, foreseeable, or otherwise. Maj. Typescript at 249-51; see also United States v. Bell, 113 F.3d 1345, 1348 (3d Cir.1997) (noting, on the appeal of Tyler’s co-defendant, that “there was no federal proceeding contemplated at the time of Proctor’s murder”); United States v. Tyler, Crim. No. 96-106, 2012 WL 951479, at *5 (M.D.Pa. Mar. 20, 2012) (“There was no evidence presented to show that a federal proceeding had been instituted, about to be instituted, or even contemplated at the time that Proctor was murdered.”). As a result, under the law both before and after Arthur Andersen, a reasonable juror could not find that Tyler engaged in tampering activity with the intent to interfere with an official proceeding as defined under the VWPA.[5]
This is not the case, however, for the law enforcement investigation-related provisions. To convict a defendant under these provisions, the Government must prove that the defendant tampered with a witness to interfere with a communication from that witness to a law enforcement officer, 18 U.S.C. § 1512(a)(1)(C) and (b)(3), and that there was “a reasonable likelihood that, had ... the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer.” Fowler, 131 S.Ct. at 2052 (emphasis in original). A “law enforcement officer” is an “officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant ... authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense.... ” *257 18 U.S.C. § 1515(a)(4)(A). The Government need not prove that the defendant knew that the law enforcement officer was federal or acting as an advisor or consultant to the federal government. 18 U.S.C. § 1512(g)(2).
The record shows that a reasonable juror could have found that it was publicly known that Proctor had been cooperating with law enforcement and that it was reasonably likely, based upon the type of information she had and with whom she was speaking, that Proctor would have communicated with federal officers. According to the trial record, Proctor was an informant for the Tri-County Drug Task Force (the “Task Force”), which was comprised of state and local law enforcement officers. Richard Diller, an agent with the Pennsylvania Office of Attorney General, Bureau of Narcotics Investigation, was the Task Force coordinator. Diller worked closely with, and referred cases to, federal agencies, including the Drug Enforcement Administration (“DEA”). Diller regularly advised and consulted with the DEA, determined whether a case should be brought to federal law enforcement, and, although not formally deputized, was authorized to develop cases on behalf of the DEA.
When Proctor was murdered, she was an informant for David Fones, a local narcotics detective who worked with the Task Force. Sometime before her murder, Proctor provided Fones with information concerning David Tyler’s source for cocaine in New York City and his ties to Jamaican drug distributors. According to Fones, the Task Force protocol required Diller to evaluate information Proctor provided to determine if it could be used in other investigations, and, to this end, Fones testified that he would have met with Diller to discuss a further role for Proctor. Although Diller was not aware of Proctor’s statements to Fones before her death, Diller testified that Proctor’s statements to Fones would have been significant in deciding whether Proctor would have been a federal witness, and that he intended to refer Proctor to the DEA as a witness. DEA Special Agent Keith Humphreys testified that, had he been provided with Proctor’s statements to Fones, the DEA would have been interested in pursuing this information and Proctor would have likely been a DEA witness. Based on this record, and as this Court has already concluded, United States v. Tyler, 281 F.3d 84, 99 (3d Cir.2002), a reasonable juror could find that Diller was a federal “law enforcement officer” for purposes of the VWPA, who advised and consulted with the DEA on a regular basis, frequently referred cases from the Task Force to federal law enforcement agencies, including the DEA, was the intended recipient of drug trafficking information from Proctor concerning multistate and multinational drug dealers, and intended to refer Proctor to the DEA. Accordingly, a reasonable juror, properly instructed in accordance with Fowler, could find that Proctor would have communicated with law enforcement about drug trafficking and that there was a reasonable likelihood that one of these communications would have been made to a federal law enforcement officer. Because the record belies Tyler’s claim of actual innocence, I would affirm the District Court’s order dismissing Tyler’s petition for lack of jurisdiction.
III.
The fact that the jury returned a general verdict does not impact our abilby to evaluate Tyler’s actual innocence claim. First, the general verdict precedents upon which the Majority relies, Griffin v. United States, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), and Syme, 276 F.3d 131, are direct appeal cases that apply a different and less demanding standard. *258 As direct appeal cases, Griffin and Syme focus on the actions of the jury. Under the “actual innocence” standard applicable at this stage, Bousley and Schlup mandate that the focus be on proof of Tyler’s actual innocence and not the actions of the jury. Applying the perspective set forth under Griffin and Syme both ignores the actual innocence standard and effectively lessens the burden Tyler must carry to invoke § 2255(e)’s safety valve,[6] upsetting the balance the Supreme Court carefully struck when it formulated the demanding actual innocence standard.
Second, even assuming Griffin and Syme apply, they do not require a different result. Griffin states that if the record shows that there is sufficient evidence to support one theory but insufficient evidence to support another, then the jury is presumed to have convicted on the theory that the evidence supports. Griffin, 502 U.S. at 59-60, 112 S.Ct. 466. Here, there was no evidence of an official proceeding and thus a reasonable juror’s verdict would not have been based upon this theory. This leaves one other basis, the law enforcement investigation-related provisions, for a reasonable juror to have returned a guilty verdict. While the verdict was based on an improper jury instruction, the actual innocence standard requires that we examine the record in light of a proper instruction.[7] As set forth above, there is sufficient evidence from which such a reasonable, properly instructed juror could have returned a guilty verdict. Because Tyler cannot demonstrate that he is actually innocent on both theories of guilt,[8] he cannot satisfy the actual innocence test and thus, I would conclude that the District Court properly dismissed his petition.
For these reasons, I respectfully dissent.

. This strict standard is appropriate. The actual innocence standard seeks to "balance the societal interests in finality ... and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case.” Schlup, 513 U.S. at 324, 115 S.Ct. 851. To reflect this balance, the actual innocence standard is therefore purposefully "demanding” and was formulated to ensure that a successful petitioner’s case is "truly extraordinary.” House v. Bell, 547 U.S. 518, 537-38, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (quotation marks and citations omitted); see also McQuiggin v. Perkins, - U.S. -, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013) (noting that a showing of actual innocence may "served as a gateway" through an "impediment” that otherwise bars consideration of a petitioner’s claim).

. Because § 1512 is written in the disjunctive, the official proceeding provisions and the law enforcement investigation-related provisions are alternative ways of committing the same offense. 18 U.S.C. § 1512; see also United States v. Rigas, 605 F.3d 194, 208 (3d Cir.2010) (en banc) (noting that Congress’s "use of disjunctive language creates alternative ways of violating a statute” and that such language "created a single offense that may be committed in alternative ways”).

. The Majority cites United States v. Davies, 394 F.3d 182, 191 (3d Cir.2005), for the proposition that "[a] petitioner can establish that no reasonable juror would have convicted him by demonstrating an intervening change in law that rendered his conduct noncriminal,” Maj. Typescript at 246. While this is a correct statement, I part company with the Majority as its analysis does not include consideration of whether the change in the law here, as applied to the facts of our case, demonstrates that no reasonable juror could find that Tyler did not violate the law. A court analyzing a petitioner’s actual innocence claim must apply the holding of the intervening Supreme Court decision to the record to determine if a reasonable juror applying such law would have convicted him. See id. at 192-96.

. Several of our sister circuits have held similarly. See, e.g., Ryan v. United States, 645 F.3d 913, 917 (7th Cir.2011) ("[The actual innocence] standard depends on the content of the trial record, not the content of the jury instructions.”) vacated on other grounds by Ryan v. United States,-U.S.-, 132 S.Ct. 2099, 182 L.Ed.2d 866 (2012); Stephens v. Herrera, 464 F.3d 895, 899 (9th Cir.2006) ("[T]he mere fact of an improper instruction is not sufficient to meet the test for actual innocence.”); Bosley v. Cain, 409 F.3d 657, 662 (5th Cir.2005) ("[T]he [actual innocence] standard requires the district court to 'make a probabilistic determination about what reasonable, properly instructed jurors would do.' ”) (quoting Schlup, 513 U.S. at 329, 115 S.Ct. 851).
Moreover, at oral argument, both Tyler and the Government acknowledged this very point. Oral Arg. at 8:04-8:20 (“At this point in the litigation ... I don’t think jury instructions are something I can attack. It’s really a matter of establishing a lack of criminal conduct at this point.”) (May 13, 2013); Oral Arg. at 32:23-32:34 ("When we come to actual innocence ... the Court is not to consider jury instructions or anything else. It is actual innocence.”) (May 13, 2013).

. While the Majority ostensibly remands to the District Court to conduct an evidentiary hearing, the directions the District Court must follow, Maj. Typescript at 252-53, will almost certainly result in a .new trial for Tyler. This is because the Majority instructs the District Court to vacate the jury's verdict if Tyler can establish his actual innocence on just one of the two theories. Maj. Typescript at 253. The Majority has found that there is “no evidence” of an official proceeding. Maj. Typescript at 250. Thus, unless the Government can produce new evidence of an official proceeding on remand, the Majority’s instructions to the District Court would likely require vacatur on this ground.

. Further, the Majority’s application of Griffin and Syme here appears even more relaxed than it would be on direct appeal. Indeed, in general verdict cases on direct appeal, even if a jury was instructed on a legally invalid theory, the verdict need not be vacated if the instructional error was harmless. See Skilling v. United States, 561 U.S. 358, 130 S.Ct. 2896, 2934, 177 L.Ed.2d 619 (2010).

. It is true that Syme holds that when "one of two or more alternative theories supporting a count of conviction is ... legally invalid, then the reviewing court should vacate the jury verdict and remand for a new trial without the invalid or unconstitutional theory,” Syme, 276 F.3d at 144 (citation omitted), but the delivery of erroneous jury instructions alone does not satisfy the actual innocence standard. See infra at 255.

. Our decision in United States v. Garth, 188 F.3d 99 (3d Cir.1999), supports this conclusion. In Garth, the habeas petitioner had pled guilty to an offense under 18 U.S.C. § 924(c), which could be violated in one of four alternative ways. Id. at 110. After his conviction, the Supreme Court narrowed § 924(c) and the petitioner sought relief under § 2255, invoking the actual innocence exception to the procedural default bar. Id. at 103-05, 107-09. The Garth majority found that the record supported the petitioner’s actual innocence claim only after reviewing the evidence on each of the four possible theories. Id. at 109-114. Thus, the Garth majority recognized that, in order for a petitioner to be actually innocent of a criminal statute with alternative means of committing an offense, such a petitioner must be actually innocent under each of the alternative theories. The Garth dissent agreed with the majority on this point. Id. at 114 (Roth, J., dissenting) (agreeing that a petitioner must be actually innocent of all four alternative theories in order to be actually innocent of the offense charged, but, upon review of the record, finding that he was not actually innocent on one of the theories).