[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14746
Non-Argument Calendar
_____

D.C. Docket Nos. 1:11-cv-22567-ASG,
1:01-cr-00208-ASG-7

JESUS AGUERO,

Petitioner-Appellant.

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 12, 2014)

Before WILSON, ANDERSON, and  EDMONDSON, Circuit Judges.

PER CURIAM:

Jesus Aguero, a former federal prisoner,[1] proceeding with counsel, appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate his sentence. Following a jury trial in 2003, Aguero and other City of Miami Police Department ("MPD") officers were convicted of conspiring to obstruct justice, in violation of 18 U.S.C. §§ 371 and 1512(b)(3), and obstruction of justice, in violation of 18 U.S.C. § 1512.   The evidence at trial showed that Aguero and his codefendants were involved in several police-related shootings, that they planted guns -- which had been stolen from other crimes scenes and held for future use -- at the scenes of the shootings, and that they made misleading statements to state investigators about the shootings.

At trial and later on direct appeal, Aguero argued that the evidence was insufficient under *United States v. Veal*, 153 F.3d 1233 (11th Cir. 1998), to show a "likelihood" that his misleading conduct would be communicated to federal authorities.  We affirmed Aguero's convictions.  *United States v. Ronda*, 455 F.3d 1273, 1285 (11th Cir. 2006).  Applying the rationale in *Veal*, which said that the

---

[1] Aguero was serving his three-year term of supervised release when he filed his § 2255 motion.  His term of supervised release expired on August 15, 2011, while his § 2255 motion was pending.  Aguero still meets § 2255's "in custody" requirement. *See United States v. Brown*, 117 F.3d 471, 475 (11th Cir. 1997) (concluding that a § 2255 movant, who was serving his term of supervised release at the time of filing, was "in custody" within the meaning of § 2255); *see also Reed v. United States*, 471 F.2d 721, 722 (5th Cir. 1973) ("[I]t is well settled that if one is imprisoned at the time of the original filing of the [§ 2255] motion, and released before determination thereof, the cause of action does not become moot.").

government need only show that there was a "possibility" or "likelihood" that communication would be made to federal authorities, we concluded that the evidence was sufficient to show that Aguero's misleading conduct was "likely" to be communicated to federal authorities. *Id.*

Aguero filed a § 2255 motion after the Supreme Court's decision in *Fowler v. United States*, 563 U.S. __, 131 S.Ct. 2045, 179 L.Ed.2d 1099 (2011). *Fowler* altered the *Veal* standard. In his motion, Aguero argued that his convictions should be vacated because he was convicted under an incorrect legal standard. The district court denied his § 2255 motion, concluding that the claim he raised in his motion was procedurally defaulted because (1) he did not attack the *Veal* standard on direct appeal, and (2) that even if he had preserved his claim, it failed on the merits. We issued a certificate of appealability ("COA") on the following issues:

(1)    Whether Aguero preserved a challenge to the sufficiency of the evidence of a federal nexus for his convictions

(2)    Assuming that Aguero's claim is preserved, whether any error was harmless.

On appeal, Aguero argues that he preserved a challenge to the sufficiency of the evidence of a federal nexus for his convictions. He further argues that he attacked the *Veal* standard at trial and on direct appeal. Moreover, given that *Veal* was binding precedent at the time, he says by objecting to the application of the *Veal* standard, he preserved a challenge to the standard itself. Aguero also

3

contends that the failure to employ the *Fowler* standard at his trial was not harmless.

In reviewing a "district court's denial of a § 2255 motion, we review findings of fact for clear error and questions of law *de novo*." *Rhode v. United States*, 583 F.3d 1289, 1290 (11th Cir. 2009). The issue of whether a habeas petitioner's claims are subject to procedural default is a mixed question of law and fact, which we review *de novo*. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). The scope of review in a § 2255 appeal is limited to issues specified in the COA, which we construe "in light of the pleadings and other parts of the record." *Murray v. United States*, 145 F.3d 1249, 1250-51 (11th Cir. 1998). We review harmlessness under the standard announced in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), *de novo*. *Burns v. Sec'y, Fla. Dep't of Corr.*, 720 F.3d 1296, 1305 (11th Cir. 2013) (addressing the district court's harmless-error determination under the *Brecht* standard in a § 2254 petition).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year statute of limitations for filing a § 2255 motion, which begins to run from the latest of the following four possible events:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;

4

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).  The one-year period under § 2255(f)(3) begins to run on the date the Supreme Court recognizes a new right.  *Dodd v. United States*, 545 U.S. 353, 358-59, 125 S.Ct. 2478, 2482, 162 L.Ed.2d 343 (2005).

The Supreme Court has explained that its decisions "holding that a substantive federal criminal statute does not reach certain conduct . . . necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal."  *Bousley v. United States*, 523 U.S. 614, 620, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998) (quotation omitted).  Accordingly, decisions that narrow the scope of a criminal statute by interpreting its terms generally apply retroactively.  *See Schriro v. Summerlin*, 542 U.S. 348, 351-52, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004) (citing *Bousley*, 523 U.S. at 620-21, 118 S.Ct. at 1610).  Any court may determine that a Supreme Court decision applies retroactively for purposes of 28 U.S.C. § 2255(f)(3).  *See Dodd v. United States*, 365 F.3d 1273, 1278 (11th Cir. 2004), *aff'd on other grounds*, 525 U.S. 353, 125 S.Ct. 2478, 162 L.Ed.2d 343 (2005).

Under the procedural default rule, a defendant who fails to raise an available challenge to a criminal conviction on direct appeal is barred from raising that claim in a collateral proceeding. *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011). To preserve an argument for collateral review, a party must "plainly and prominently" raise the issue on direct appeal. *Brown v. United* States, 720 F.3d 1316, 1332 (11th Cir. 2013), *petition for cert. filed*, (U.S. Feb. 24, 2014) (No. 13-8899, 13A607) (concluding that defendant's § 2255 claim was procedurally defaulted because defendant failed to cite the relevant law and make legal argument on the pertinent issue in his brief on direct appeal). A procedural default may be excused, however, if one of two exceptions applies: (1) cause and actual prejudice, or (2) actual innocence. *Bousley*, 523 U.S. at 622, 118 S. Ct. at 1611, 140 L. Ed.2d 828 (1998).

In *Brecht*, the Supreme Court determined that the appropriate standard for harmlessness of a non-structural constitutional error on collateral review is whether the error "had substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 623, 113 S.Ct. at 1714. An error is not harmless if the court is "in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S.Ct. 992, 994, 130 L.Ed.2d 947 (1995) (quotation omitted).

6

We have applied the *Brecht* harmless-error review standard to non-structural constitutional errors on collateral review. *See Ross v. United States*, 289 F.3d 677, 681-82 (11th Cir. 2002).  A non-structural constitutional error "occurs during the presentation of the case to the jury" and can be "assessed in the context of other evidence presented in order to determine the effect it had on the trial."  *Brecht*, 507 U.S. at 629, 113 S.Ct. at 1717 (quotation and alteration omitted).  A structural error, on the other hand, only occurs in cases where there are "extreme deprivations of constitutional rights, such as denial of counsel, denial of self representation at trial, and denial of a public trial."  *Ross*, 289 F.3d at 681.

Section 1512(a)(1)(C) of Title 18 provides in relevant part that, "Whoever kills . . . another person, with intent to . . . prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . shall be punished."  18 U.S.C. § 1512(a)(1)(C).  A person violates 18 U.S.C. § 1512(b)(3) if the person "engages in misleading conduct toward another person, with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense."  18 U.S.C. § 1512(b)(3).

In *Fowler*, the Supreme Court considered whether a violation of 18 U.S.C. § 1512(a)(1)(C) requires that the defendant have the intent not only to prevent

7

communication to law enforcement officers in general, but to federal officers in particular. *See Fowler*, 563 U.S. at ___, 131 S.Ct. at 2048. Fowler shot and killed a police officer who had approached him and his codefendants in a cemetery where they were preparing to rob a bank. *Id.* Fowler was later charged under § 1512(a)(1)(C). *Id.* After Fowler was convicted in the district court, he appealed to our Court, arguing that the evidence was insufficient to show that he had killed the police officer intending to prevent his communication with a federal officer. *Id.* We applied the *Veal* "possibility" standard -- which had addressed convictions under § 1512(b)(3) -- and affirmed Fowler's conviction, concluding that a "possible or potential communication to federal authorities" was sufficient under the statute. *Id.* (quotation omitted); *see also United States v. Fowler*, 603 F.3d 883, 886-87 (11th Cir. 2010), *rev'd*, 563 U.S. ___, 131 S.Ct. 2045 (2011) (noting that § 1512(a)(1)(C) and § 1512(b)(3) contain similar wording).

The Supreme Court vacated our decision. The Court concluded that to establish a violation of § 1512(a)(1)(C), the government "must show that there was a *reasonable likelihood* that a relevant communication would have been made to a federal officer." *Fowler*, 563 U.S. at ___, 131 S.Ct. at 2048 (emphasis in original). The Supreme Court rejected the "possibility" standard, writing that "to allow the Government to show only a mere possibility that a communication would have been with federal officials is to permit the Government to show little more than the

8

possible commission of a federal offense." *Id.* at 2051.  The Supreme Court explained that the government was not required to show that the communication, if it occurred, was federal beyond a reasonable doubt, or even more likely than not. *Id.* at 2052.  The government, however, "must show that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical." *Id.*  Because Fowler conceded that he did not argue at trial that the evidence was insufficient to satisfy the "reasonable likelihood" test, the Supreme Court remanded the case for the lower courts to determine how this standard applied to the facts of his case. *Id.* at 2053.

As a preliminary matter, the magistrate judge correctly determined that Aguero's § 2255 motion -- which was filed three years after his conviction became final -- qualified for the 28 U.S.C. § 2255(f)(3) exception because *Fowler* applies retroactively to final criminal convictions, as it narrowed the scope of a criminal statute by interpreting its terms.  *See Dodd*, 365 F.3d at 1278 (noting that any court may determine whether a Supreme Court decision is retroactive for purposes of § 2255(f)(3)); *see also Schiro*, 542 U.S. at 351-52, 124 S.Ct. at 2522.  Next, although *Fowler* interpreted the intent element under § 1512(a)(1)(C), we will extend the interpretation to the intent element under § 1512(b)(3) because the statutory language of those two portions of the statute is nearly identical. *Compare* 18 U.S.C. § 1512(a)(1)(C), *with* 18 U.S.C. § 1512(b)(3).

Here, the parties agree that Aguero preserved a challenge to the sufficiency of the evidence of a federal nexus for his convictions, at least as far as that challenge rests on the *Veal* "possibility" standard.  The claim Aguero raises in his § 2255 motion, however, is not merely an evidentiary sufficiency claim, but rather a general claim that he was convicted under an erroneous legal standard.  Aguero chiefly argues that the evidence was insufficient to convict him under the *Fowler* standard.  The government argues that Aguero's *Fowler* claim is procedurally defaulted because he did not specifically challenge the *Veal* "possibility" standard at trial or on direct appeal.  Thus, an issue presented is whether a sufficiency-of-evidence challenge under the then-applicable legal standard on direct appeal preserves for collateral review a challenge that a conviction is invalid based on a later Supreme Court decision that altered that legal standard, making it a higher standard for conviction.

We have not had an occasion to address this precise issue in a published decision.  We need not address this issue here either, because as discussed by the district court, Aguero's *Fowler* claim fails on the merits.  *See Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011) (noting, in the § 2254 context, that it was not necessary to determine whether the petitioner's claims were procedurally barred, because the petition failed on the merits); *see also Lynn v. United States*, 365 F.3d 1225, 1238 (11th Cir. 2004) (stating that, assuming *arguendo* that the § 2255

10

movant established cause and prejudice to excuse the procedural default, the claim would still fail on the merits).

Aguero cannot show that the failure to utilize the *Fowler* standard at his trial "had substantial and injurious effect or influence in determining the jury's verdict." *See Brecht*, 507 U.S. at 623, 113 S.Ct. at 1714; *Fowler*, 563 U.S. __, 131 S.Ct. at 2052. He does not contest that the evidence at trial showed that he planted evidence at police-related shootings and provided misleading sworn statements to investigators. Instead, he argues that no evidence showed a "reasonable likelihood" that the transmission of information related to these shootings would be transferred to federal authorities. But ample, to an extent undisputed, evidence showed "the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical." *See Fowler*, 563 U.S. __, 131 S.Ct. at 2052. Evidence at trial showed a working relationship between the MPD and the federal government, that a massive investigation results each time a police-related shooting occurs, and that standard practice existed of forwarding information from questionable shootings to the FBI. So, we have no significant doubt -- much less have grave doubt -- that the jury would have found that "the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical." *See Fowler*, 563 U.S. at __, 131 S.Ct. at 2052. The evidence shows that it was "reasonably likely" that the misleading information from Aguero and

11

his coconspirators would be transferred to federal authorities; thus that the *Veal* standard governed at the time of Aguero's trial had no "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht*, 507 U.S. at 623, 113 S.Ct. at 1714.

Furthermore, that the *Veal* "possibility" standard was the legal, applicable standard in our Circuit at the time of Aguero's trial did not influence the jury's verdict in fact: neither the government argued to nor the district court instructed the jury per *Veal* that no more than a mere possibility of a communication to federal officers was required for conviction. Aguero and his codefendants objected at the charge conference to the district court's suggestion that the jury be instructed that the "misleading information is likely or possibly to be transferred to a federal law enforcement officer." The district court ultimately instructed the jury only that the government must prove beyond a reasonable doubt that "the defendant intended to hinder, delay, or prevent communication of information to a law enforcement officer or Judge of the United States." This statement tracks the language of the statute, is not error, and is unchanged by *Fowler*, which is an elaborating interpretation of the intent language. *See* 18 U.S.C. § 1512(b)(3); *see also Fowler*, 563 U.S. at __, 131 S.Ct. at 2048-52. Thus, no grave doubt exists about the impact of the *Veal* mere-"possibility" standard on Aguero's trial; the *Veal* standard actually played no direct or substantial part in the verdict and was not (could not

12

be) injurious to Aguero for the verdict.  *See Brecht*, 507 U.S. at 623, 113 S.Ct. at 1714; *see also Ross*, 289 F.3d at 683.  Accordingly, we affirm the district court's denial of Aguero's § 2255 motion.

**AFFIRMED.**