**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, <br><br> v. <br><br> CHRISTOPHER MICHAEL JOHNSON, *Defendant-Appellant.* | No. 16-50018 <br><br> D.C. No. 2:14-cr-00208-BRO-1 <br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Beverly Reid O'Connell, District Judge, Presiding

Argued and Submitted March 10, 2017
Pasadena, California

Filed November 2, 2017

Before: Richard A. Paez, Marsha S. Berzon,
and Morgan Christen, Circuit Judges.

Opinion by Judge Paez

## SUMMARY[*]

### Criminal Law

The panel reversed the district court's denial of the defendant's motion for a judgment of acquittal in a case in which the defendant was convicted of obstruction of justice under 18 U.S.C. § 1512(b)(3) for failing to include material information about the use of force upon an inmate in reports documenting the encounter with the inmate.

The panel held that the "reasonable likelihood" standard articulated in *Fowler v. United States*, 563 U.S. 668 (2011), applies to the federal nexus requirement of § 1512(b)(3). Applying the *Fowler* standard, the panel held that there was insufficient evidence for any rational juror to find that it was reasonably likely that the defendant's reports would have reached federal officers.

### COUNSEL

Robert Rabe (argued), Muna Busailah, and Michael P. Stone, Stone Busailah LLP, Pasadena, California, for Defendant-Appellant.

Bruce K. Riordan (argued), Assistant United States Attorney, Public Corruption and Civil Rights Section; Lawrence S.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Middleton, Chief, Criminal Division; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

## OPINION

PAEZ, Circuit Judge:

Defendant Christopher Johnson ("Johnson") appeals his obstruction of justice conviction under 18 U.S.C. § 1512(b)(3). The basis for Johnson's prosecution was his failure to include material information about the use of force upon an inmate in several reports documenting the encounter with the inmate. On appeal, Johnson argues that the Government failed to present sufficient evidence of a federal nexus for the alleged offense.

Reviewing de novo and applying the federal nexus standard established in *Fowler v. United States*, we agree. More precisely, we hold that there was insufficient evidence for any rational juror to find that it was reasonably likely that Johnson's reports would have reached federal officers. We therefore reverse the district court's denial of Johnson's motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29.

## I.

On June 17, 2013, Johnson was a custodial deputy working in the control room of the Santa Barbara County Main Jail Inmate Reception Center ("IRC"). A pre-trial detainee, C.O., began using the emergency intercom system to contact the control room with non-emergency calls. As a

result, Johnson enlisted Kirsch, another deputy, to accompany him to the detainee's cell to "counsel" him about proper usage of the intercom system. When C.O. responded belligerently, Johnson and Kirsch handcuffed the detainee and proceeded to lead him to a more secure area. At the end of a hallway, Johnson and Kirsch were forced to pause in order to get through a secure door.

Although it is unclear what, exactly, prompted the following sequence of events, Johnson testified that, while waiting at the door, he instructed C.O. to stop talking and face the wall, but C.O. did not do so. Together, Johnson and Kirsch then completed a "takedown" of C.O., forcing him onto the floor, in order to "gain control" of him. While C.O. was on the floor, Kirsch proceeded to strike him in the stomach with his foot and knee multiple times. At the same time, other officers were approaching the scene. Deputy Janette Reynoso momentarily separated Kirsch and C.O., who was soon lifted off the ground and led through the secure door to a "safety cell."[1]

Johnson informed his supervisor, Sgt. Ronald Osborne, that he and Kirsch had placed C.O. in a safety cell because he was being combative. At Sgt. Osborne's instruction, Johnson wrote and submitted a safety cell report about "20 or 30 minutes" after the hallway incident. Later that day, C.O. complained of pain, which triggered two additional reporting requirements—an incident report and a duplicative use-of-force report. Johnson apparently wrote an incident report at

---

[1] According to Johnson's testimony, safety cells are used to house inmates "who are a danger to themselves, suicide watch or just harming themselves in any way, danger to staff or other inmates, or damaging county property."

some point, but Sgt. Osborne never received it. Neither the safety cell report nor the incident report mentioned any kicks or knee strikes.

On April 10, 2014, a grand jury indicted Kirsch and Johnson for assaulting C.O. in violation of 18 U.S.C. § 242. Additionally, the grand jury indicted Johnson for obstructing justice in violation of 18 U.S.C. § 1512(b)(3). Section 1512(b)(3) provides, in relevant part:

> Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to . . . . hinder, delay, or prevent the communication to a law enforcement officer or judge *of the United States* of information relating to the commission or possible commission of a Federal offense . . . . shall be fined . . . or imprisoned not more than 20 years, or both. § 1512(b)(3) (emphasis added).

The first jury trial ended in a mistrial. After a second trial, a new jury found Kirsch and Johnson not guilty of assault. The jury did find Johnson guilty of obstruction of justice, however. Johnson moved for a judgment of acquittal, for a new trial, and to dismiss the indictment. He argued that *Fowler v. United States*, 563 U.S. 668 (2011) applied to § 1512(b)(3), requiring the Government to prove that there was a "reasonable likelihood" that he intended to hinder communication to an officer *of the United States*, specifically, which he argued it failed to do. The district court denied all three motions. Although the court agreed that *Fowler*

applied, it ultimately concluded that the Government had met the "reasonable likelihood" standard. We agree on the former point, but not the latter.

## II.

In the context of a Rule 29(c) motion for a judgment of acquittal, we review de novo the sufficiency of the evidence. *See United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc). In reviewing the constitutional sufficiency of the evidence, we must determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime."[2] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Katakis*, 800 F.3d 1017, 1023 (9th Cir. 2015).

---

[2] Under *Jackson*, inquiries into the sufficiency of evidence proceed in two steps. *Jackson*, 443 U.S. at 319. "First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution." *Nevils*, 598 F.3d at 1164. At this step, "a reviewing court 'must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any . . . conflicts in favor of the prosecution, and must defer to that resolution.'" *United States v. Del Toro-Barboza*, 673 F.3d 1136, 1143 (9th Cir. 2012) (quoting *Jackson*, 443 U.S. at 326).

"Second, . . . the reviewing court must determine whether this evidence, so viewed, is adequate to allow '*any* rational trier of fact to find the essential elements of the crime . . . .'" *Nevils*, 598 F.3d at 1164 (internal alteration omitted). "At this second step, however, a reviewing court may not ask itself whether *it* believes that the evidence at the trial established guilt[,] . . . only whether *any* rational trier of fact could have made that finding." *Del Toro-Barboza*, 673 F.3d at 1143–44 (internal quotation marks omitted).

## III.

As a threshold matter, we agree with Johnson and the district court that *Fowler*'s reasonable likelihood standard applies to 18 U.S.C. § 1512(b)(3). The defendant in *Fowler* challenged a witness tampering conviction under 18 U.S.C. § 1512(a)(1)(c), a similar investigation-related provision of the same statute at issue here. *Fowler*, 563 U.S. at 670–71.[3] Acknowledging that the statute expressly states that "no state of mind need be proved" to establish the federal status of the officer, *see* 18 U.S.C. § 1512(g)(2), the Supreme Court first held that the Government was not required to show that the defendant had particular federal officers in mind, *Fowler*, 563 U.S. at 672–73. The Court explained that "any such limitation would conflict with the statute's basic purpose" of preventing witness tampering. *Id.* at 673.

But the Court concluded that "more than the broad indefinite intent" to prevent communication with law enforcement officers, generally, was required. *Id.* at 674. The Court reasoned that requiring only a broad intent without a federal nexus would "extend[] the scope of this federal statute well beyond the primarily federal area that Congress had in mind." *Id.* at 675. The Court then looked closely at the language of § 1512(a)(1)(c). Examining the dictionary definition of the word "prevent," *id.* at 674–77, the Court concluded that the Government had to demonstrate a

---

[3] Section 1512(a)(1)(c) punishes "[w]hoever kills or attempts to kill another person, with intent to . . . . prevent the communication by any person to a law enforcement officer or judge *of the United States* of information relating to the commission or possible commission of a Federal offense." 18 U.S.C. § 1512(a)(1)(c) (emphasis added).

"reasonable likelihood" that the information would have reached federal officers, *id.* at 677–78.

We hold that the Court's reasoning applies with equal force to § 1512(b)(3). As an investigation-related provision of the same statute, subsection (b)(3) enjoys the same fundamental purpose and scope as subsection (a)(1)(c). And its similarly-worded text compels the same conclusion, as our sister circuits have recognized. *See United States v. Veliz*, 800 F.3d 63, 74 (2d Cir. 2015) (explaining that, even before *Fowler*, the Second Circuit "applied the same federal nexus test to both subsections 'because the elements of subsection (b)(3) are similar to the elements of subsection (a)(1)(C)'") (quoting *United States v. Diaz*, 176 F.3d 52, 91 (2d Cir. 1999)); *United States v. Chafin*, 808 F.3d 1263, 1274 (11th Cir. 2015) (vacating a § 1512(b)(3) conviction because "the district court should have analyzed the evidence under *Fowler*'s reasonable likelihood standard"); *United States v. Shavers*, 693 F.3d 363, 378–79 (3d Cir. 2012) (grouping together §§ 1512(b)(3) and (a)(1)(C) as "investigation-related provision[s]"), *vacated on other grounds, Shavers v. United States*, 133 S. Ct. 2877 (2013) (mem.).

The Government protests that *Fowler* is inapplicable because it involved "a hypothetical communication," whereas, here, an actual communication must have made its way to federal officers for Johnson to be prosecuted. At best, this argument amounts to a distinction without a difference. At worst, it is a limitation that swallows the rule. Indeed, every federally prosecuted case must necessarily involve an actual communication to federal officers at some point. To argue, therefore, that an actual communication renders *Fowler* inapposite is to make *Fowler* a nullity. We decline to

read *Fowler* in this nonsensical way. *Fowler*'s standard applies to the federal nexus requirement of § 1512(b)(3).

**IV.**

Applying the *Fowler* standard, we conclude that the Government failed to present sufficient evidence to show that there was a reasonable likelihood that the communication would reach a federal officer. The Government's evidence established nothing "more than [a] remote, outlandish, or simply hypothetical" possibility that Johnson's reports could have reached a federal officer. *Fowler*, 563 U.S. at 678. Viewing the evidence in the light most favorable to the Government, no rational trier of fact could have found the federal nexus element of the crime.

**A.**

As the Supreme Court made clear in *Fowler*, the "reasonable likelihood" standard requires neither proof "beyond a reasonable doubt, nor even . . . more likely than not." *Fowler*, 563 U.S. at 678. But the Government must demonstrate that the likelihood was "more than remote, outlandish, or simply hypothetical." *Id.* Beyond these basic parameters, the Court essentially left "it to the lower courts to determine whether, and how, the standard applies." *Id.*

Our sister circuits' approaches have diverged in the wake of *Fowler*. Prior to *Fowler*, the Third Circuit held that the federal nexus element "may be inferred by the jury from the fact that the offense was federal in nature, plus additional appropriate evidence." *United States v. Bell*, 113 F.3d 1345, 1349 (3d Cir. 1997) (internal quotation marks omitted); *United States v. Stansfield*, 101 F.3d 909, 918 (3d Cir. 1996).

As the district court recognized, the Third Circuit identified "(1) proof that 'there was a federal investigation in progress' at the time . . . or (2) proof that the defendant had 'actual knowledge of the federal nature of the offense'" as examples of "additional appropriate evidence." (quoting *Stansfield*, 101 F.3d at 918 & n.4). After *Fowler*, however, the Third Circuit abandoned the "additional appropriate evidence" approach in favor of a test requiring "evidence–not merely argument of the witness's cooperation with law enforcement" to establish "a *reasonable likelihood* that the person whom the defendant believes may communicate with law enforcement *would in fact* make a relevant communication with a federal law enforcement officer." *Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 185 (3d Cir. 2017) (internal quotation marks omitted); *United States v. Tyler*, 732 F.3d 241, 252 (3d Cir. 2013).[4] Nonetheless, the Second and Fourth Circuits have carried forward the Third Circuit's pre-*Fowler* approach but require that the "additional appropriate evidence" satisfy *Fowler*'s reasonable likelihood standard. *Veliz*, 800 F.3d at 74; *United States v. Ramos-Cruz*, 667 F.3d 487, 497 (4th Cir. 2012).

Applying the Third Circuit's pre-*Fowler* approach, the district court determined the Government had sufficiently shown that "[t]he civil rights at issue here [we]re, in fact, predominantly federal." The court also stated that the Government had provided "additional appropriate evidence" demonstrating (1) that Johnson "had actual knowledge regarding the federal nature of the crime," and (2) that a

---

[4] Still, the Third Circuit "emphasize[d] that the government need not prove that a federal investigation was in progress at the time the defendant committed [a] witness-tampering offense." *Tyler*, 732 F.3d at 252 (second alteration in original) (internal quotation marks omitted).

federal investigation into the use-of-force incident involving Deputies Kirsch and Johnson did, in fact, occur. But the Government disagrees with this approach, arguing that "*Fowler* set forth adequate parameters to permit this Court and the district courts to engage in case-by-case analysis."

We need not decide whether to adopt the "additional appropriate evidence" approach to resolve this case. As we explain below, we conclude that the Government's evidence established only a "remote, outlandish, or simply hypothetical" possibility that Johnson's reports would reach federal officers. Johnson's motion for a judgment of acquittal therefore should have been granted.

**B.**

At trial, the Government presented minimal evidence of a federal nexus. First, the Government presented evidence that the Santa Barbara county sheriff's use of force policies incorporated *Graham v. Connor*, 490 U.S. 386 (1989), which established that the excessive use of force by law enforcement officers violates the Constitution. The Government showed that Johnson received training on *Graham*, that he knew of *Graham*, and that he took an oath of office to uphold the Constitution. Second, the Government's expert witness testified that he reviewed a statement of the incident that C.O. gave to his public defender. Finally, as the district court highlighted, the same expert testified that he reviewed one of Johnson's reports as well as transcripts of witness interviews conducted by an FBI agent.

Taken together or separately, this evidence does not demonstrate that Johnson's reports were reasonably likely to reach a federal officer. Even if Johnson knew he was

covering up a constitutional violation, an expert witness's passing mention of files he reviewed in preparation to testify at the second trial does not bear on whether, at the time Johnson wrote the reports, there was "more than [a] remote, outlandish, or simply hypothetical" possibility that those reports would reach a federal officer.

The Government could have met the *Fowler* standard in a variety of ways, and likely without much difficulty. Evidence suggesting, for example, that federal officials (1) were in contact with the county jail, (2) had investigated similar incidents at the jail in the past, or (3) had established a policy or practice of investigating similar incidents in the area, of assisting state and local officials with investigations into such incidents, or of sharing information with state and local officials, would likely all aid the Government in satisfying the federal nexus requirement. But, in this case, the Government's evidence was too remote.

The judgment is **REVERSED**.