In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3753

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GROVER COLEMAN FERGUSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 15-Cr-81 — **Rudolph T. Randa**, *Judge*.

ARGUED MAY 26, 2016 — DECIDED AUGUST 3, 2016

Before WOOD, *Chief Judge*, and MANION and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Defendant Grover Ferguson appeals his sentence. He was seventeen years old when he shot a woman three times during a carjacking, permanently disabling her. The high end of the guideline range for his crime was 217 months in prison. The government recommended a 240-month above-guideline sentence based on the severity of

Ferguson's violent actions. The district court, however, imposed a sentence of 600 months (50 years) in prison, or more than 31 years longer than the top of the guideline range.

We vacate the sentence and remand for re-sentencing. The Sentencing Guidelines are, of course, advisory. A judge is free to exercise his or her judgment to depart from them. Such a dramatic variance from a guideline range, however, requires a substantial explanation. *Gall v. United States*, 552 U.S. 38, 50 (2007). The explanation given here does not support a sentence that is more than 31 years and more than two and a half times longer than the top of the guideline range.

I.   *Ferguson's Crime and Sentence*

On April 21, 2015, Ferguson was seventeen years old. He was drunk and high. He wanted a car. He approached a woman on the street as she was getting into her car. He opened the passenger door, pointed a gun at the woman, and demanded her keys. She hesitated, thinking Ferguson was joking.

Ferguson demanded the keys again, and he then shot the woman three times at point-blank range, including one shot to her face. Ferguson walked over to the woman, got her keys, and started the car. The woman somehow managed to drag herself to the curb to avoid being run over as Ferguson drove off. Police arrested Ferguson the next day driving the stolen car, but only after a high-speed chase.

Ferguson's crimes had a devastating effect on the woman he shot. She lost sight in one eye and has nerve damage to her ear and face. She suffers pain daily. She cannot drive anymore and depends on others for transportation. She has not been able to work since the attack. Ferguson's attack left her with

psychological injuries. She has nightmares about the robbery, has become scared of her surroundings, and panics when she sees young men outside her home.

Ferguson pled guilty to vehicular robbery by force, 18 U.S.C. § 2119(2), and discharge of a firearm in relation to a crime of violence, 18 U.S.C. § 924(c)(1)(A)(iii). The statutory range for the carjacking is up to 25 years (300 months) in prison. The statutory range for discharging the firearm is a mandatory minimum ten years (120 months) up to life, which must be consecutive to the sentence for the carjacking.

There is no dispute about the Sentencing Guideline calculation here. The guideline range for the carjacking was 78 to 97 months, and the guideline sentence for the firearm count was 120 months, consecutive to the carjacking sentence. The total guideline range was thus 198 to 217 months (sixteen and a half years to a little over eighteen years).

At the sentencing hearing, the government requested an above-guideline 20-year sentence due to the senselessly violent nature of Ferguson's crime. The victim exercised her right to be heard under the Crime Victims' Rights Act, 18 U.S.C. § 3771, and urged the court to impose the maximum possible sentence. The defense proposed a fifteen-year sentence. The district court sentenced Ferguson to 50 years: eight years for the carjacking and 42 years for firing the gun.

II. *The Delayed Supervised Release Conditions*

Before addressing Ferguson's arguments, we first address some procedural confusion in the case. The district court sentenced Ferguson orally on December 3, 2015 and entered its written judgment of conviction on December 9, 2015. The sentence at that time was not complete, though, because the

judge had not yet announced the conditions of supervised release that he intended to impose, nor had he decided the amount of restitution. On December 11, 2015, Ferguson filed his notice of appeal. More than three months later, on March 22, 2016, the district court issued an amended judgment of conviction that included conditions of supervised release and ordered restitution of just over $23,000. Ferguson did not file a new notice of appeal.

The district court erred by failing to impose conditions of supervised release at the time of the sentencing hearing and in the original written judgment of conviction. "Conditions of supervised release are part of a defendant's sentence." *United States v. Neal*, 810 F.3d 512, 516 (7th Cir. 2016). If the district court imposes a term of supervised release, the court must impose certain conditions. Courts usually impose additional standard recommended conditions and sometimes impose additional special conditions. See 18 U.S.C. § 3583(d); U.S.S.G. § 5D1.3. The court should announce those conditions and provide any needed explanations at the sentencing hearing, subject to a defendant's possible waiver of the full recitation or explanation if there is no controversy about them. See *United States v. Orlando*, No. 15-2092, — F.3d —, —, 2016 WL 3027527, at *4–5 (7th Cir. May 25, 2016) (error to delay imposing mandatory term and conditions of supervised release; suggesting caution about delaying imposition of discretionary and special conditions); *United States v. Lewis*, No. 14-3635, — F.3d —, —, 2016 WL 3004435, at *5 (7th Cir. May 24, 2016) (elucidating waiver); *United States v. Thompson*, 777 F.3d 368, 376 (7th Cir. 2015) (error to omit from judge's oral sentencing statement a condition of supervised release that was included in the written judgment).

A district court may, of course, modify the conditions of supervised release after sentencing. 18 U.S.C. § 3583(e)(2). At the time the district court acted here, we had held that a district court could modify conditions after a defendant had filed a notice of appeal. See *United States v. Ramer*, 787 F.3d 837, 838–39 (7th Cir. 2015). Recently, however, we overruled that aspect of *Ramer* and now require parties and district courts to use the process under Seventh Circuit Rule 57 to modify terms of supervised release while an appeal is pending. *United States v. Ray*, Nos. 14-3799 & 15-3193, — F.3d —, —, 2016 WL 4011168, at *5 (7th Cir. July 27, 2016). We remand for a full re-sentencing on other grounds, though, so we need not base our decision on this procedural bobble.[1]

III.  *Explaining the Above-Guideline Sentence*

The Sentencing Guidelines have been advisory since *United States v. Booker*, 543 U.S. 220 (2005), but the Supreme Court's decisions since *Booker* make clear that the advice from the Guidelines is important and that non-guideline sentences

---

[1] The district court's failure to enter a complete judgment of conviction in December 2015 does not deprive us of appellate jurisdiction. A judgment of conviction that includes a sentence of imprisonment is a "final judgment." 18 U.S.C. § 3582(b); see also *Dolan v. United States*, 560 U.S. 605, 617–18 (2010) (discussing finality of judgment ordering imprisonment).

In contrast to the treatment of supervised release conditions, the district court's delay in determining the amount of restitution was expressly authorized by statute. See 18 U.S.C. § 3664(d)(5) (allowing 90-day delay after sentencing to determine amount); *Dolan*, 560 U.S. at 607–08 (district court did not lose jurisdiction to determine restitution after 90 days after sentencing, at least where court had earlier indicated its intent to order some amount of restitution).

call for explanations sufficient to support meaningful appellate review. The Guidelines were intended to reduce unjustified sentencing disparities, so that similar crimes by similar defendants would result in similar sentences. See *Peugh v. United States*, 569 U.S. —, —, 133 S. Ct. 2072, 2079 (2013); *Booker*, 543 U.S. at 250. Even after *Booker*, the district judge must begin the sentencing process by calculating the applicable guideline range even if she does not intend to stay within that range. *Gall v. United States*, 552 U.S. 38, 49–50 & n.6 (2007); see also *Peugh*, 569 U.S. at —, 133 S. Ct. at 2083 ("The post-*Booker* federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review.").

Under the post-*Booker* sentencing scheme, a sentencing judge remains free to disagree with the broad philosophies underlying the Guidelines or with specific provisions. *Gall*, 552 U.S. at 49–50; *Kimbrough v. United States*, 552 U.S. 85, 101–02 (2007). And even when the Guidelines were mandatory, a judge's power to sentence outside the guideline range was an essential part of the guideline system. The Sentencing Commission and advocates of the Guidelines have never claimed that guideline sentences were appropriate in every case. *Booker*, 543 U.S. at 234 ("The Guidelines permit departures from the prescribed sentencing range in cases in which the judge 'finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'"), quoting 18 U.S.C. § 3553(b) (2000); see also U.S.S.G. § 1B1.4, cmt., background (2004). But two cornerstones of the Sentencing Reform Act that have survived *Booker*

are that appellate review of sentences must be meaningful and that sentencing judges must provide enough of an explanation to allow meaningful appellate review. *Peugh*, 569 U.S. at —, 133 S. Ct. at 2083–84; *Gall*, 552 U.S. at 50–51.

Among the Supreme Court's post-*Booker* cases, most relevant for this case is *Gall*, which teaches that a sentencing judge "must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." 552 U.S. at 46. If a judge "decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 50. The Supreme Court found it "uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Id.* A district court's explanation must be adequate to "allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.*

Here, the variance from the Sentencing Guidelines was unusually large: 31 years, and more than two and a half times, longer than the upper end of the guideline range. We acknowledge that such a large variance, even from an already high guideline range, may be justified in an unusual case. Following the reasoning of *Gall*, however, such a large variance requires a compelling justification. The district court did not provide one.

In explaining the sentence, the judge recognized that Ferguson's youth made him "more reckless, thoughtless, more impetuous, compulsive than adults" and that "medical studies show that the human brain isn't fully formed until about

age 26" (although the judge's remark about the immaturity of the juvenile brain was in relation to the effects of marijuana on juveniles). The judge also described Ferguson's senselessly violent crime as "flat out evil" and like a "terrorist attack." He noted the need to protect the public from future crimes. And he noted Ferguson's expression of remorse, his youth, his drug use, his criminal history, and his family characteristics. The judge said that the 50-year sentence "takes into account and reflects the seriousness of this evil, terrorist act. Seriousness of the offense. Promotes respect for the law. Hopefully that message will get out. Creates a just punishment. Provides adequate deterrence, and protects the public from further crime." The judge told Ferguson: "Every day that you spend in prison should be a reminder to you that I'm atoning for this evil act. … And that will be good for you, believe it or not."

All of those statements are perfectly understandable given the nature of Ferguson's crimes, but the judge did not explain in the hearing why he found the guideline range so inadequate as punishment as to impose a sentence more than 31 years higher.[2]

---

[2] The written statement of reasons did not add a lot: "The victim's mental pain and suffering along with her loss of independence is not considered by the guidelines. The offense occurred when the defendant was 17 years old and only two months after he was discharged from a lengthy juvenile conviction. He failed at every attempt given him in the juvenile system including group homes, residential placements, and counseling. At the time of the offense he was drinking, using marijuana, and taking pills. He has a fascination with guns and an explosive temper which makes him dangerous." Those are valid reasons for imposing an above-guideline sentence, but they provide no additional insight why such a dramatic variance from the guideline range was needed.

By statute a judge must impose "a sentence sufficient, but not greater than necessary," to serve the purposes of sentencing. 18 U.S.C. § 3553(a). Here, the court did not explain why 50 years was "sufficient, but not greater than necessary." The government requested an above-guideline sentence of 20 years. That recommendation did not bind the court, of course, but we are unable to tell from the district court's stated reasoning why 20 or 30 or 40 years would have been insufficient to serve the purposes of sentencing mandated in 18 U.S.C. § 3553(a). The district court's explanation does not "allow for meaningful appellate review" of why the judge deemed 50 years appropriate, and not any shorter sentence. *Gall*, 552 U.S. at 50.

We do not mean to overstate the district court's duty of providing an explanation. Nor do we intend to imply that there is only one reasonable sentence in this or any other case, or that sentencing is an exact science. We have upheld other above-guideline sentences that district courts did not justify in great detail, but those cases did not present circumstances as dramatic as this one.

For example, in *United States v. Castaldi*, 743 F.3d 589, 591 (7th Cir. 2014), we upheld a 23-year sentence that was about 50 percent longer than the high end of the guideline range, based on the extraordinary harm the defendant's Ponzi scheme inflicted on his victims. We found the judge's explanation was clear enough that there was no need for a remand, though one judge dissented from that conclusion. *Id.* at 596–97, 600; see also *United States v. Stinefast*, 724 F.3d 925, 931 (7th Cir. 2013) (affirming 216-month sentence, more than five years above 151-month high end of guideline range, because "court's discussion, while brief, reflects its consideration and

rejection of" argument in mitigation); *United States v. Perez-Molina*, 627 F.3d 1049, 1051 (7th Cir. 2010) (34-month sentence for unlawful entry into the United States that was more than twice the upper end of the guideline range adequately justified by judge's consideration of "the other circumstances drawing Perez-Molina to the United States, along with the need to deter him from reentry and crime"); *United States v. Jackson*, 547 F.3d 786, 796 (7th Cir. 2008) (upholding 96-month sentence, which was eighteen months above guideline range, because, among other reasons, "although it might have been better for the district court judge to articulate his reason for rejecting" an underdeveloped argument in mitigation, it was not procedural error not to address it).

In Ferguson's case, the variance from the guideline range was more than 31 years, and it was proportionally about three times larger than the variance in *Castaldi*. As horrific as Ferguson's crime was, and as devastating as it has been for the victim, we conclude that more of an explanation is necessary to justify Ferguson's sentence. See *Gall*, 552 U.S. at 50 ("We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one."); see also *Graham v. Florida*, 560 U.S. 48, 70 (2010) (noting that life without parole is "especially harsh punishment for a juvenile" because "a juvenile offender will on average serve more years and a greater percentage of his life in prison than an adult offender"). The magnitude of the deviation from the Sentencing Guidelines in this case and the gravity of the impact on both the victim and the defendant required a fuller explanation of why the sentence was necessary to achieve the goals of punishment.

At the sentencing hearing, the judge also strayed into some subjects that seem at best tangentially related to the sentencing. The judge alluded to the 1965 Moynihan Report (more formally, "The Negro Family: The Case for National Action," by Daniel Patrick Moynihan) and mentioned the "destruction of the family." The judge also cited the use of child soldiers in the Tet Offensive during the Vietnam War as a case study for juvenile blameworthiness. He mentioned how, back in the 1950s or 1960s, he had dated a girl from the same neighborhood as Ferguson's victim and did not have to worry about being carjacked then.

The judge's comments at sentencing about the Tet Offensive and dating a girl from Ferguson's victim's neighborhood in the 1950s or 1960s did not rise to the level of the same judge's comments that caused us to remand for resentencing in *United States v. Robinson*, No. 15-2019, — F.3d —, 2016 WL 3947808 (7th Cir. July 22, 2016), and *United States v. Figueroa*, 622 F.3d 739 (7th Cir. 2010). Yet the comments still give us pause. In *Robinson* and *Figueroa*, troubling discourses on matters irrelevant to sentencing left us with "'no way of knowing' whether 'these irrelevant considerations affected' the sentence." *Robinson*, — F.3d at —, 2016 WL 3947808, at *1, quoting *Figueroa*, 622 F.3d at 741. We do not remand on that ground here, but the facts that the judge dated someone from Ferguson's victim's neighborhood 50 years ago or encountered child soldiers in the Vietnam War should have no bearing on Ferguson's sentence. The court should not risk giving parties and observers the impression that they might.

We remand because of a procedural error, so we do not reach the substantive reasonableness of the sentence. We also do not decide whether Ferguson's sentence complies with the

Eighth Amendment. Ferguson's crime was horrific and sense-less. It was due to grace, good luck, and the skill of Milwau-kee's first responders that Ferguson did not kill his victim.

We also do not hold or mean to imply that an above-guide-line sentence is unreasonable in this case. In particular, the Guidelines' six-level increase for "permanent or life-threaten-ing bodily injury" under § 2B3.1(b)(3)(C), which applies only to the carjacking guideline and not to the discharge of a fire-arm guideline, may well fail to account sufficiently for the devastating effects on Ferguson's victim.

The six-level increase can apply to a very wide range of physical effects on a victim and may not account for psycho-logical injury or effects on day-to-day life. The Guidelines de-fine "permanent or life-threatening bodily injury" as "injury involving a substantial risk of death; loss or substantial im-pairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigure-ment that is likely to be permanent." U.S.S.G. § 1B1.1 app. note 1(J). It is easy to imagine that injuries less disabling than Ferguson's victim's loss of sight in one eye and daily pain would warrant the same six-level increase. Taken literally, this same six-level increase would apply to both the loss of a toe or finger and to Ferguson's victim's loss of sight in one eye, loss of peace of mind, and loss of her ability to live pain-free and independently. Also, under § 2K2.4(b), the guideline range for Ferguson's discharge of a firearm, 18 U.S.C. § 924(c)(1)(A)(iii), is the same as the statutory minimum, ten years in prison, *in all cases*.

These points merely emphasize that the Guidelines are guidelines. Their application is not and never has been in-tended to be a substitute for individualized judgment. It

would not be unreasonable to think that the statutory minimum on the firearm charge is not appropriate in every case. We need not say more about the substantive issues. The sentence is VACATED and the case is REMANDED to the district court for re-sentencing, where all substantive issues may be addressed by the parties and then by the district judge.